IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CHRISTIAN MARTINEZ, <br> TDCJ No. 01919664, <br> Petitioner, <br><br> v. <br><br> BOBBY LUMPKIN,[1] <br> Director, Texas Department of <br> Criminal Justice, Correctional <br> Institutions Division, <br> Respondent. | § § § § § § § § § § § § | EP-19-CV-63-FM |

## MEMORANDUM OPINION AND ORDER

Christian Martinez challenges Bobby Lumpkin's custody of him through a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet'r's Pet. 2, ECF No. 1. Martinez asserts his trial and appellate counsel provided constitutionally ineffective assistance. Id. at 9–10. Lumpkin answers the Court should deny the petition because Martinez fails "to establish that the state court's [previous] rejection of his claims was objectively unreasonable." Resp't's Resp. 1, ECF No. 16. The Court, after reviewing the record, will deny the petition. The Court will additionally deny Martinez a certificate of appealability.

## BACKGROUND AND PROCEDURAL HISTORY

On the afternoon of January 28, 2011, Nallely Galindo entered her Pratt Avenue home in El Paso, Texas, and found "blood on the floor." *Martinez v. State*, No. 08-14-00130-CR, 2016 WL 4447660, at *1 (Tex. App. Aug. 24, 2016). As she walked through her house, she observed her sister, Jovanna Flores, "lying motionless and covered with blood." *Id.* She discovered Martinez, also covered in blood, lying on her mother's bed. *Id.* She did not recognize

---

[1] Petitioner names Lorie Davis, the former Director of the Correctional Institutions Division, as Respondent. Bobby Lumpkin recently replaced Davis as Director. Lumpkin is automatically substituted for Davis pursuant to Federal Rule of Civil Procedure 25(d).

Martinez but she shook him anyway to see if he was alive. *Id.* She found he was unresponsive. *Id.* She left the bedroom and located her mother, Amalia Flores, "bloodied from multiple stab wounds." *Id.* She called the police. *Id.*

Martinez had a "deep cut on his left wrist." *Id.* At a hospital later that day, Martinez volunteered to a police officer that he had argued "with his girlfriend and wandered around looking for a house to break into so he could find a gun to kill himself." *Id.* He claimed that when he could not find a gun in the Pratt Avenue residence, he "got upset and snapped," and, the next thing he knew, both women were dead. *Id.*

Martinez was indicted for the capital murder of Amalia and Jovanna Flores in Cause Number 2011D01837 in the 384th Judicial District Court in El Paso County. Clerk's R. 10, Indictment, ECF No. 7-14. His case was later reassigned to the 210th Judicial District Court—also in El Paso County. Clerk's R. 72, Transfer and Assignment Order, ECF No. 7-14. He responded to the prosecution's notice of its intent to seek the death penalty with a notice of his intent to raise an insanity defense. Clerk's R. 69, Notice, ECF No. 7-14; Clerk's R. 19, Notice, ECF No. 7-15.

Martinez's behavior raised the issue of his competence to stand trial. Consequently, he participated in a pre-guilt/innocence competency hearing before a jury. State Habeas R. 2, Findings & Conclusions, ECF No. 11-14.

During the competency hearing, his counsel "picked up Dr. Timothy Proctor's Report of Insanity Evaluation during cross-examination [and] verbally referenced the document as a 'report of insanity.'" State Habeas R. 15, Aff. of Jaime Gandara, ECF No. 11-14. The State objected, claiming insanity was "irrelevant to competency." Reporter's R. 51, 64, ECF No. 7-24. The competency court overruled the objection when Martinez's counsel explained the

-2-

report contained the results of a relevant psychological test. *Id.* at 51. But the competency court subsequently decided "to instruct the jury to disregard and not consider for any purposes whatsoever, the fact that an insanity evaluation or sanity evaluation was conducted." *Id.* at 66.

Martinez's counsel also failed to immediately object to State's Exhibit No. 2—a chart viewed by the jury which "contained the names of all of the professionals who evaluated Mr. Martinez for competency with their conclusions." State Habeas R. 16, Aff. of Jaime Gandara, ECF No. 11-14; *see also* Reporter's R. 64, ECF No. 7-24. The diagram included a conclusion that Martinez was competent to stand trial by a professional who did not testify, Dr. Cynthia Rivera. *Id.* After the competency court commented on Dr. Rivera's hearsay on the chart, the prosecution marked out her name and the conclusion "in front of the jury for purpose of eliminating, or at least minimizing, any effect it may have [had] on them." *Id.* at 16.

Martinez was ultimately found competent to stand trial by the jury. Reporter's R. 53, ECF No. 7-25.

Martinez did not contest any of the facts at his trial; instead, he focused instead on an insanity defense. *Martinez*, 2016 WL 4447660, at *1.

The jury, after hearing the evidence, rejected Martinez's insanity defense and found him guilty of murdering Amalia and Jovanna Flores. Clerk's R. 54, Verdict Form A, ECF No. 7-19. It then determined there was a reasonable probability that Martinez would commit criminal acts of violence which would constitute a continuing threat to society. Clerk's R. 69, Special Issue No. 1, ECF No. 7-19. But it also found mitigating circumstances which justified sentencing him to life imprisonment without parole rather than death. Clerk's R. 70, Special Issue No. 2, ECF No. 7-19. Based on the jury's findings, the trial judge sentenced Martinez on May 19, 2010, to life in prison without parole. Clerk's R. 33, J. of Conviction by Jury, ECF No. 7-19.

Martinez claimed in his first point of error on appeal that his counsel provided ineffective assistance when he "failed to move to suppress a warrantless search of his cell phone [and] develop an adequate record to support the disqualification of the district attorney's office." *Martinez*, 2016 WL 4447660, at *2. He argued in his second point of error that "his due process rights were violated because of the district attorneys' involvement in the investigation of the case, and in particular its decision not to test certain blood evidence from the crime scene." *Id.* at *7. He complained in his third point of error that the trial court improperly excluded "several lay witnesses who would have testified in support of his insanity defense." *Id.* at *6. He also complained in his fourth point of error that the trial court improperly excluded the testimony of one of his expert witnesses. *Id.* at *12. He finally maintained in his fifth point of error that his "constitutional rights were violated by imposing a life sentence without the possibility of parole" due to his "intellectual disability." *Id.* at *13.

The Eighth Court of Appeals overruled all five of Martinez's points of error and affirmed his capital murder conviction. *Id.* at *16.

Martinez claimed in a subsequent state application for a writ of habeas corpus that his trial and appellate counsel provided constitutionally ineffective assistance. State Habeas R. 9–16, Application, ECF No. 11-18; State Habeas R. 1-18, Application, ECF No. 11-19. Specifically, he asserted that his trial counsel provided ineffective assistance when he referred to a "report of insanity" and exposed his trial strategy to the jury during the competency hearing. State Habeas R. 14, ECF No. 11-18. He also claimed that his counsel "failed to object to prejudicial hearsay" on State's Exhibit No. 2—which was placed before the jury on the first day of his competency trial and listed the expert witnesses and their conclusions on his competence to stand trial. *Id.* at 15. He then averred that his appellate counsel "failed to raise more

-4-

prevailable issues," including the errors of his trial counsel during his competency hearing. *Id.* at 16.

The state trial court—acting as a habeas court—reviewed Martinez's application and prepared findings of fact and conclusions of law. State Habeas R. 21–40, Findings & Conclusions, ECF No. 11-14. The state habeas court found the record, when viewed in the context of the totality of counsel's representation, did "not affirmatively demonstrate that the isolated instance of inadvertence by [Martinez's] attorney . . . in briefly referencing Dr. Proctor's insanity report rendered his representation of the applicant constitutionally deficient." *Id.* at 31. The state habeas court further found that a hearsay objection to State's Exhibit No. 2—the chart with the names and opinions of the expert witnesses—"would have been futile because rules 703 and 705(a) of the Texas Rules of Evidence allowed the State to question the defense experts about their knowledge of, or reliance on, Dr. Rivera's testing and conclusions, even if that evidence constituted hearsay." *Id.* at 34. Hence, the state habeas court found that "[t]he record does not affirmatively demonstrate that [Martinez] suffered prejudice as a result of any deficient performance by . . . trial counsel in not objecting to the State's demonstrative chart." *Id.* at 35. The state habeas court also observed that Martinez "has not demonstrated that [his] trial counsel were ineffective." *Id.* at 37. Consequently, it reasoned that Martinez could not "show any decision by direct-appeal counsel not to raise a non-meritorious complaint on appeal was objectively unreasonable. *Id.* at 37. Accordingly, the state habeas court concluded that Martinez "failed in his burden of proving ineffective assistance of . . . trial counsel, both deficient performance *and* prejudice." *Id.* at 38 (emphasis in original). Moreover, the state habeas court concluded that Martinez "failed in his burden of proving ineffective assistance of appellate counsel, both deficient performance *and* prejudice. *Id.* (emphasis in original).

The Texas Court of Criminal Appeals denied Martinez's application for writ of habeas corpus on the findings of the state trial court—acting as a state habeas court—without a hearing and without a written order. State Habeas R., Action Taken, ECF No. 10-12.

Martinez raises the same three issues that he raised in his state writ application in his federal petition:

CLAIM ONE

Martinez Was Denied His Constitutional Right To Effective Counsel Where Counsel Failed To Object To Inadmissible Hearsay Before The Jury At The Competency Trial Prejudicing Martinez To Such A Degree That The Entire proceeding Was Unfair, Undermining The Integrity Of The Outcome Of That Proceeding.

CLAIM TWO

Martinez Was Denied His Constitutional Right To Effective Counsel Where During The Competency Trial, Counsel Opened The Door To Allow The Jury To Hear That Martinez Was providing A Not Guilty By Reason Of Insanity Defense Prejudicing The Defense Which Netted An Unfair Trial.

CLAIM THREE

Martinez Was Denied His Constitutional Right To Effective Appellate Counsel Where Counsel Failed To Raise More Prevailable [sic] Issues Inwhere [sic] Had Those Issues Been Advanced, There Is A Reasonable Probability That The Outcome Of That Proceeding Would Have Differed.

Mem. in Supp. 11–12, ECF No. 1-1. Martinez asks for "the relief to which he may be entitled." Pet'r's Pet. 14, ECF No. 1.

Lumpkin believes that Martinez has exhausted his state remedies, as required by 28 U.S.C. § 2254(b)(1). Resp't's Resp. 5, ECF No. 16. He maintains that "[t]he petition should be denied because Martinez fails to establish that the state court's rejection of his claims was objectively unreasonable." *Id.* at 1. Therefore, he asks "that Martinez's petition for writ of habeas corpus be denied." *Id.* at 25.

## APPLICABLE LAW

"[C]ollateral review is different from direct review," and the writ of habeas corpus is "an extraordinary remedy," reserved for those petitioners whom "society has grievously wronged." *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993). It "is designed to guard against extreme malfunctions in the state criminal justice system." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). It provides for an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions.").

As a result, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow. "Indeed, federal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). They must generally defer to state court decisions on the merits. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). And they must defer to state court decisions on procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998). They may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

For claims that were adjudicated in state court, 28 U.S.C. § 2254(d) imposes a highly deferential standard which demands a federal habeas court grant relief only where the state court judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(2). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Moreover, the federal habeas court's focus is on the state court's ultimate legal conclusion, not whether the state court considered and discussed every angle of the evidence. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion"). Indeed, state courts are presumed to "know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Factual findings, including credibility choices, are entitled to the statutory presumption, so long as they are not unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Further, factual determinations made by a state court enjoy a presumption of correctness which the petitioner can rebut only by clear and convincing evidence. *Id.* § 2254(e)(1); *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact). The presumption of correctness applies not only to express findings of fact, but also to "unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

In sum, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."

*Harrington*, 562 U.S. at 102–03 (quoting *Jackson*, 443 U.S. at 332, n.5). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## ANALYSIS

Martinez asserts his trial counsel provided constitutionally ineffective assistance during his competency trial when they (1) failed to object to inadmissible hearsay and (2) opened the door to allow the jury to hear that he planned to raise an insanity defense if he went to trial. Mem. in Supp. 11–12, ECF No. 1-1. He maintains his appellate counsel also provided ineffective assistance by failing to raise more "prevailable issues" in his direct appeal. *Id.* at 12.

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To successfully state a claim, a petitioner must demonstrate (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94. Unless the petitioner establishes both—deficient performance and prejudice—his ineffective assistance of counsel claim fails. *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002).

Under the first *Strickland* prong, a petitioner must establish his counsel's performance fell below an objective standard of reasonable competence. *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993). But when deciding whether counsel's performance was deficient, a federal habeas court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial

strategy." *Strickland*, 466 at 688–89. Hence, a federal habeas court presumes that counsel's choice of trial strategy is objectively reasonable unless clearly proven otherwise. *Id.* at 689. In fact, Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Id.* at 673; *Pape v. Thaler*, 645 F.3d 281, 289–90 (5th Cir. 2011). Furthermore, Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006).

Under the second *Strickland* prong, a petitioner must demonstrate his counsel's deficient performance prejudiced him. *Id.*, at 764. He "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "deficient performance does not result in prejudice unless that conduct so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result." *Knox v. Johnson*, 224 F.3d 470, 479 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 687).

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). It must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the

-10-

*Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

### A. Failure to Object to Hearsay

Martinez first claims his trial counsel erred when they failed to make a hearsay objection to State's Exhibit No. 2—the chart placed before the jury on the first day of his competency hearing which listed the expert witnesses and their conclusions about his competence to stand trial. Pet'r's Pet. 9, ECF No. 1. The chart included a conclusion by Dr. Rivera—who did not testify at the hearing—that Martinez was competent to stand trial.

The state habeas court found that a hearsay objection to State's Exhibit No. 2 "would have been futile." State Habeas R. 34, Findings & Conclusions, ECF No. 11-14. It reasoned Rules 703 and 705(a) of the Texas Rules of Evidence "allowed the State to question the defense experts about their knowledge of, or reliance on, Dr. Rivera's testing and conclusions, even if that evidence constituted hearsay." *Id.* Hence, it concluded "[t]he record does not affirmatively demonstrate that [Martinez] suffered prejudice as a result of any deficient performance by . . . trial counsel in not objecting to the State's demonstrative chart." *Id.* at 35.

Rule 703 permits an expert to base an opinion on inadmissible facts:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Tex. R. Evid. 703. Rule 705(a) allows an expert to state an opinion "without first testifying to the underlying facts or data" unless the court orders otherwise. Tex. R. Evid. 705(a).

Consequently, any objection presented to the state trial court would have been unavailing. Counsel is not required to file frivolous motions or make frivolous objections. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). Counsel is also not required to make non-

-11-

meritorious arguments. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point"); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). Simply stated, "failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness[.]" *Id.*

Therefore, Martinez cannot show his trial counsel's performance was deficient. More importantly, Martinez cannot show the state habeas court's rejection of this claim was unreasonable. Martinez is not entitled to federal habeas relief on this claim.

### B. Permitted the Jury to Hear about Martinez's Planned Insanity Defense

Martinez next claims his trial counsel provided ineffective assistance when they disclosed a possible insanity defense to the jury if it found him competent and he proceeded to a trial on the merits. Pet'r's Pet. 10, ECF No. 1. He argues this prejudiced his cause because "the jury came back with a competency verdict where the evidence of incompetency was overwhelming." *Id.*

The state habeas court found the record, when viewed in the context of the totality of counsel's representation, did "not affirmatively demonstrate that the isolated instance of inadvertence by [Martinez's] attorney . . . in briefly referencing [the] insanity report rendered his representation of the applicant constitutionally deficient." State Habeas R. 31, Findings & Conclusions, ECF No. 11-14.

"[T]he Sixth Amendment does not guarantee errorless counsel." *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. 1981). Hence, a habeas court relies on a "totality of circumstances standard with which to judge counsel's ineffectiveness or lack of it." *Id.*

Judged by that standard, the Court after reviewing the record does not find that

Martinez's trial counsel rendered ineffective assistance as a whole. Moreover, the Court does not find that Martinez has shown that the state habeas court's judgment was an unreasonable application of clearly existing federal law as established by the United States Supreme Court. And Martinez has not shown "that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Martinez is not entitled to federal habeas relief on this claim.

### C. Ineffective Assistance of Appellate Counsel

Martinez contends his appellate counsel provided ineffective assistance when he raised issues only related to the guilt/innocence and punishment phases of his trial. Pet'r's Pet. 10, ECF No. 1. He asserts the issues he raises in his habeas petition "are more prevailable and had appellate counsel raised those issues there is a reasonable probability that the outcome of that proceeding would have differed." *Id.*

The *Strickland* standard also applies to claims of appellate counsel error. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). But "[t]he Constitution does not require appellate counsel to raise every non-frivolous ground that might be pressed upon appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989). The "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)) (internal quotations omitted).

The state habeas court observed that Martinez "has not demonstrated that [his] trial counsel were ineffective." State Habeas R. 37, Findings & Conclusions, ECF No. 11-14. As a result, it found that Martinez could not "show that any decision by direct-appeal counsel not to

raise a non-meritorious complaint on appeal was objectively unreasonable. *Id.* Accordingly, the state habeas court concluded that Martinez "failed in his burden of proving ineffective assistance of . . . trial counsel, both deficient performance *and* prejudice." *Id.* at 38 (emphasis in original). The state habeas court additionally concluded that Martinez "failed in his burden of proving ineffective assistance of appellate counsel, both deficient performance *and* prejudice. *Id.* (emphasis in original).

The Court after reviewing the record does not find that Martinez's appellate counsel rendered ineffective assistance as a whole. The Court also does not find that Martinez has shown the state habeas court's decision regarding his claims were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. And Martinez has not shown that the state habeas court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Martinez's claim does not merit federal habeas corpus relief.

## EVIDENTIARY HEARING

A federal court's review of claims previously adjudicated on the merits by a state court "is limited to the record that was before the state court." *Cullen*, 563 U.S. at 181; *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011). A court may hold an evidentiary hearing only when the petitioner shows that (1) a claim relies on a new, retroactive rule of constitutional law that was previously unavailable, (2) a claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, or (3) the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have convicted the petitioner. 28 U.S.C. § 2254(e)(2).

Here, Martinez's petition asserts multiple claims already adjudicated on the merits in

state court. He does not rely on a new rule of constitutional law or new evidence. The evidence of his guilt was overwhelming. Therefore, he is not entitled to an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability "may issue only if the petitioner has made a 'substantial showing of the denial of a constitutional right.' " *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) (quoting 28 U.S.C. § 2253(c)(2)). In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, Martinez has not made a substantial showing of the denial of a constitutional right. Thus, reasonable jurists could neither debate the denial of Martinez's § 2254 petition nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Therefore, the Court shall not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes that Martinez has not met his burden of showing that the state habeas court's judgment denying him relief was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. He has also not met his burden of showing that the state habeas court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the

state court proceedings. The Court accordingly concludes that Martinez is not entitled to federal habeas relief. The Court also concludes that Martinez is not entitled to a certificate of appealability. The Court, therefore, enters the following orders:

**IT IS ORDERED** that the Martinez is **DENIED** an evidentiary hearing.

**IT IS FURTHER ORDERED** that Martinez's "Petition for a Writ of Habeas Corpus by a Person in State Custody" under 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Martinez is **DENIED** a certificate of appealability.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SIGNED** this _2_ day of October 2020.

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**